The next case today is Richwell Group, Inc. v. Seneca Logistics Group, LLC, Appeal Number 201015. Attorney Rasich. Thank you and may it please the Court. Good morning, Your Honors. My name is Lee Rasich and I represent the Appellant Defendant from the lower court, Seneca Logistics Group, LLC. We are here today on Seneca's appeal of a summary judgment decision against it by the U.S. District Court, District of Massachusetts. This is a case involving the Carmack Amendment and other related provisions of federal law which govern the loss of cargo in interstate commerce. This action arose when a load of lobsters was stolen out of a cold storage facility in Everett, Massachusetts in December of 2016. My client, Seneca, acted, it alleges, as the broker of that cargo shipment which was supposed to be taken from Massachusetts to California. California is where the shipper plaintiff is and that's Richwell doing business as Maxfield. Maxfield allegedly hired Seneca to have transported that load of lobsters from Everett, Massachusetts to California. Now, the problems arose when the carrier hired by my client, Seneca, turned out to be an imposter who stole the load and was never seen again. In this case, we have claims under Count 1 of the Carmack Amendment where the shipper is alleging that Seneca was not acting as a broker but rather accepted so much responsibility for the load itself that they were actually classified as a carrier and subject to the Carmack Amendment. Feel free to slow me down or ask me to explain my understanding of these statutes at any point, of course, but under the Carmack Amendment, only a carrier can be liable for the loss of cargo in interstate commerce and not a broker. That is a strict liability statute, so the stakes are quite high for a broker being classified or potentially as a carrier. The crucial point that I want to focus on in this appeal first because I think it's the most important was the judge's decision at summary judgment to make the fact-intensive decision that Seneca was acting as a carrier and not as a broker. I think that the case law says that that decision was supposed to go to the jury and should have at least gone to the jury and was not ripe for summary judgment. I'm relying in principle on the 11th Circuit decision from 2018 in Essex Insurance Co. v. Barrett Moving and Storage. Coincidentally, the lower court did cite that case I think three times, at least several times in its summary judgment order, so it was clearly aware of that decision. Counsel, the Essex case could be read as establishing a per se rule that these are always factual disputes that need to go to a jury, but it need not be read that way. You do have powerful arguments that regardless of Essex on the facts here, the matter should have gone to the jury. If you are correct, what follows as to the preemption rulings and what follows Thank you, Your Honor. I apologize before I proceed further. May I please reserve two minutes of my time at the end? No. You ask for it at the beginning or you don't get it. Thank you, Your Honor. I will be quick. If we have questions, we'll ask you. Thank you. What happens next? We have two preemption arguments. The preemption arguments concern the count two and three of this three count complaint. Count two is for negligence and count three is for breach of contract. The parties did have a signed written brokerage contract. So let me focus first, if I may, on the negligence count. Counselor, if you're found to be a carrier, then Carmack would guide this case. If you're found to be a broker, isn't it true that the common law remedies could still be available? Thank you. First of all, we do not disagree with the lower court's position that if Seneca is a carrier, then the common law counts are barred. However, assuming that we're found as a broker, we believe that the case law holds that the negligence claim would be barred, both by the FAAA and sometimes referred to as the ICCTA. And also there is some support, at least in the First Circuit lower courts of New Hampshire, that that the Carmack amendment itself would bar a negligence claim against a broker. But how could we review that now? Because normally denial of a motion for summary judgment is not appealable. Your Honor, I believe that my thinking was that if this court reversed the summary judgment, it would also be able to make a finding as a matter of law that the complaint itself was deficient, which Seneca had moved to dismiss under 12b-6. So we also did ask that this court review that determination to determine whether preemption should have been allowed, sort of, I guess, as an alternative remedy now, if in fact there was a dispute. But we also we also don't rule review 12b-6 denials as well. Let me let me build on that. OK, we don't review denials of summary judgment. We don't review at this point in proceedings a denial of the motion to dismiss. But as I understand your position, nonetheless, the question of whether your client is a broker or a carrier is a predecessor question that should be resolved before the question of preemption is addressed. Have I understood you? Very much so, Your Honor. Yes, we've cited at least 18 facts in our brief that support the defense that Seneca acted as the most important of which is the signed brokerage contract. And I'd like to remind or point out to the court that that the allegations of the complaint itself alleged that the services provided with respect to the particular load that was lost were the subject of their breach of contract claim under the written brokerage contract. So they're not necessarily saying that there was a subsequent agreement that was later entered into for carriage services. They are in their contract asserting that the written brokerage contract gives rise to their claim for breach of contract for this particular stolen load. So if we were to find that the question of broker versus carrier really should go to the jury, the relief you're asking for is to vacate and remand. And then to determine after resolution of that issue, the preemption arguments. I'm unclear what exactly you're asking for.  We're primarily seeking reversal of the summary or the vacating of the summary judgment order. And that we believe would take the issue of carrier versus broker back to the jury. And there would be a trial on that issue alone, as well as on damages and everything else, I suppose. And at that point, the party at the trial, the parties would address any preemption arguments through probably motions at the close of the evidence. OK, thank you. Are there further questions? So if we could go back to my question, do you do you do you agree that we do not review? Are you dropping your request that we review the denial of 12B6 motion? Your Honor, I was under perhaps a mistaken impression that there was a de novo standard of review on a motion to dismiss. I stand corrected if that's not the case. Of course, defer to your expertise. Well, no, it's not a question of standards review. It's a question of reviewability. My question is, do you have any basis for saying that we should we have even jurisdiction to review on appeal a denial of a 12B6 motion? Your Honor, I defer to my brief on that section. I don't have a case specifically. Thank you. Thank you, counsel. Attorney Zuckerman, you can unmute at this time and attorney Rashes, you can mute. Thank you, Mr. Toomey. Good morning, Your Honors. Elizabeth Zuckerman appearing for the plaintiff appellee, the ritual group doing business as Maxfield Seafood. May it please the court. Your Honor, may I first address the issue of summary judgment and its availability on a question of whether an entity is a carrier or a broker? Certainly, not in every instance would it be appropriate to render summary judgment on that issue. It is clear from the cases across the country that it does involve a review of undisputed material facts. However, Your Honor, two points emerge. I'm sorry, but the inferences to be drawn from every single fact in this record are highly disputed. The inferences, Your Honor, but the underlying facts of the matter were undisputed. And why did those underlying facts drive a conclusion that no jury could possibly find against you? Your Honor, I believe Judge Tolwani was very careful in her application of the law to the undisputed facts. No, no, no, no, no, no, no. Please. What are the key facts you're relying on that you think are dispositive? Firstly, Your Honor, the inquiry really is about control. And the key facts that went to the control of the load, the legal responsibility for the shipment, were these. First, that Seneca agreed to transport the load prior to ever engaging any third party which was going to actually perform the physical transportation. It agreed it would ensure that the load went from Everett, Massachusetts to Los Angeles, California. And in fact, it did not even begin the process of retaining an entity that would do the physical transporting until the morning of the date that it had already selected for that transportation to occur. So it was a substantial period of time during which Seneca had taken the legal responsibility to make sure the transportation occurred and had not yet selected any additional party to physically perform that task. But don't brokers often do that? In fact, my securities broker, I don't think he necessarily checks to see if he's got a specific seller. I don't know if he does. How do we find it's a matter of law that brokers always first contract with a third party before they agree to the brokerage? Under the cases, Your Honor, the question is whose legal responsibility was it to take to ensure the transportation of the load? And here in a number of ways, Seneca said that's my responsibility. Counsel, you're not answering the question. You were relying on a delay in identifying someone to transport. This is in some ways like last in time manufacturing. What in the Carmack Amendment as a matter of law requires that upon retention or at any point up to the day that you identify a carrier if you're a broker? Your Honor, what the Carmack Amendment does is it identifies as within the definition of transportation, which is the function of a carrier. It identifies a number of auxiliary services, including in the language of the ICA, arranging for transportation and various services auxiliary to transportation, including loading, packing, refrigeration. Judge Talwani made note of all of that language and of the undisputed facts that Seneca engaged in those functions. But don't all brokers arrange for transportation? What brokers do is essentially broker a relationship between two parties, between a shipper and between a carrier. Here, there was no brokerage insofar as Richwell was never presented with you may hire this carrier or that carrier. We've identified these potential carriers for you. Instead, Richwell never even knew that there had been a third-party carrier purportedly identified to physically transport. Okay, so you're saying we should read into the Carmack Amendment, although the text doesn't say this, that the broker must present a series of options as to carriers to the shipper? What I'm saying, Your Honor, is that the Carmack Amendment... Yes or no first? Not that specific requirement, Your Honor. Okay. All right. Rather, that the Carmack Amendment says that you can be a carrier by doing things, including arranging for transportation, not simply transporting yourself. Five minutes remaining. Thank you. And that the interpretive cases say that while it may be, in some instances, a fine line between being a broker and being a carrier, that one can tread over that line and that one does so without actually ever physically taking possession of the goods by assuming responsibility. One of the key facts that Judge Talwani relied on and that was undisputed was the fact that Seneca was the one contacted for the release of the goods from the custody of the cold storage warehouse into the hands of what was purported to be a carrier but was rather an imposter. Richwell wasn't contacted about that, nor anyone at the purported operation of the purported carrier. It was Seneca that was contacted for identification of the driver and Seneca who said, yes, that's the guy. Please give him the shipment. And at which point that shipment was never seen again. How do you... Could you direct your attention, I'm sure you intend to, to the contract and how you deal with that? Yes, Your Honor. Thank you. The issue of the contract is that the case law makes very clear that when determining whether under CARMAC we have a carrier or a broker, it's an all facts and circumstances question. And Seneca instead is saying that one document executed more than a year prior to this shipment should be the sole determinant of that issue. Let me be precise. I think that's not what they're saying. I think they're saying the existence of that contract and 27 transactions in accordance with that contract at least create an issue of fact that would present the jury. I don't think they're saying it's dispositive. Your Honor, I've understood their argument to be dispositive, but I take your point that it is a factor. I think that's correct. It is a factor. However, Judge Talwani considered it as among the undisputed facts she had before her, the contract document and what it says, and concluded that even then the undisputed facts as, you know, as when the law was applied to them added up in such a way that no reasonable jury could find that Seneca hadn't behaved like a carrier. Why is that? Why is that? If you admit that this contract is a fact that points in the direction of them being a broker, what is it about the other evidence that says that a jury would have to find otherwise other than weight? Other than you're just simply saying that the evidence weighs heavily in your favor. In other words, doesn't this go back to Judge Lynch's point about reasonable inferences being drawn against the movement? Well, Your Honor, we have cross motions. So in this instance, I believe that we're looking at the reasonable inferences can be are neutral as I understand it. Counsel, that doesn't help you. If the reasonable inferences can go either way, then it's a jury question. It's not that if you lose, they win on cross motions for summary judgment. Your Honor, the issue for Judge Tawani and under the cases came down to control and the undisputed facts added up that Seneca was in control. And the reason for that is that it stood in the middle of all communications. If I may return for a second to Judge Keada's question, the communication surrounding this specific agreement for the transport of this specific load showed clearly that Seneca was in the middle of all of them. It was the entity which made every determination with respect to the transportation and how it was to occur. It stood in the middle of the communications. And the significance of that is that Richwell had no opportunity to protect itself from the harm that occurred. The result under the Carmack Amendment here is rational. The carrier has strict liability for the rational policy reason that it's in the position to avoid the harm. Could I ask you a question about the evidence? Is there in the record, I didn't see it, it may be there, the contract with the putative carrier? Yes, Your Honor. There is a contract package that the putative carrier submitted to Seneca Logistics on the morning of the scheduled pickup. And was that a contract between that carrier and your client or a contract between that carrier and Seneca? Between that carrier and Seneca, Your Honor. So that would be one of your points. You would say they contracted. In fact, the contract with you says they will contract directly with the carrier. Yes, Your Honor. Is there any evidence about custom and practice in the industry about whether brokers usually contract directly with the carrier or rather they simply find a carrier who contracts with the shipper? It is not in the record, Your Honor. That sort of stuff that's not here now could be important. Can I go back to the question of if we were to find this were a jury issue under the CARMAC amendment, do you agree that the preemption issues are not in front of us and should be resolved in light of whatever a jury concludes about the CARMAC amendment? Absolutely, Your Honor. Okay. Thank you. Your Honor, those issues were never fully briefed at the summary judgment stage and I don't believe they're ripe. Well, that's another reason. Your Honor, if I may return for a moment to the issue of policy under the CARMAC amendment. The CARMAC amendment promotes a reasonable result. That's time. Thank you. I will finish my thought if Your Honor's wish. Otherwise, I'd be happy to take it. No, please finish your thought. Thank you, Your Honor. It's a rational result to award legal responsibility to the party which had the ability to avoid the harm. And under these facts, that is Seneca because it behaved like a carrier. Seneca had the ability to vet but did not vet the purported essentially subcarrier who would transport. Richwell couldn't do that. It's faultless here. It had no knowledge of who the purported carrier was. It had no opportunity to vet. If Seneca is found to be a broker, there is no party liable to Richwell for its harm. And Richwell, though faultless, would be left without a remedy. Thank you very much, counsel. Thank you, Your Honor. That concludes argument in this case. Attorney Rasich and Attorney Zuckerman, you can disconnect from the hearing at this time.